UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | | |
|---|---|---|
| JAMIE LAMBERTZ-BRINKMAN, LAURA RIVERA, and Jane Does 4 through 10, on behalf of themselves and all others similarly situated. | ) ) ) ) ) | Civ. No. 07-3040 |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | **BRIEF IN SUPPORT OF** |
| TIM REISCH, Secretary of the S.D. Department of Corrections, DUANE RUSSELL, Warden of the S.D. Women's Prison, JUDITH STOUT, Head Nurse of Health Services Department at the S.D. Women's Prison, and John Doe Defendants. | ) ) ) ) ) ) ) ) ) ) | **MOTION FOR CLASS CERTIFICATION** |
| Defendants. | ) | |

This brief is submitted in support of motion for class certification. Initial determination of class certification is solely a procedural issue that is not based upon whether the plaintiffs stated cause of action will prevail on the merits; rather plaintiff's burden is limited to demonstrating that the proposed class satisfies the requirements of Rule 23. *Eisen v. Carlisle v. Jacquelin,* 417 U.S. 156, 178 (1974); *Shook v. El Paso County,* 386 F.3d 963, 971 (10th Cir. 2004). Accordingly, when evaluating the proposed classes, the Court must consider the substantive allegations of the Amended Class Action Complaint as true. *Shook,* 386 F.3d at 968; *Blackie v. Barrack,* 524 F.2d 891, 901 n.17 (9th Cir. 1975); *Montgomery Ward & Co. v. Langer*, 168 F.2d 182, 187 (8th Cir. 1948).

**INTRODUCTION:**

This is a 1983 action based upon the unconstitutional deprivation of prescription medication of inmates at the South Dakota Women's Prison in Pierre.  The deprivation is caused by individuals or personnel at the prison who are themselves not qualified to make such decisions.

The South Dakota Women's Prison (hereafter referred to as "SDWP") houses more than 350 female inmates.[1]  Approximately 130 inmates are currently on medication for mental health issues.[2]

**FACTS:**

The background of this case starts on April 11, 2006, when Jamie Lambertz-Brinkman filed a pro se complaint describing her treatment by prison officials.  Prior to coming to SDWP, Jamie's diagnoses included bipolar disorder, mood disorder, anti-social disorder and personality disorder.[3]  In 2005, Jamie entered the South Dakota Women's Prison with psychotropic medication prescribed to her by a treating medical physician.[4] However, nursing staff confiscated the medication upon her arrival and refused to allow her

---

[1] This information is provided as part of the South Dakota Department of Corrections website.  Date checked: March 31, 2008.  This was admitted by Defendants in their Answer in ¶5.

[2]  Ex.1, Fenske Depo, pg. 69.

[3] Amended Complaint, ¶39.

[4] Amended Complaint, ¶40.  Although at the time the renewal for the prescription had expired, Plaintiff Lambertz had pills left in her prescription bottle when she arrived at the prison.

access to it.[5]   A physician did not evaluate this decision.[6]  All of the decisions were made by nurses or other personnel who are themselves not licensed or legally qualified to prescribe or withhold medications.  Jamie tried for almost a year to gain permission to see a psychiatrist before she obtained approval.[7]  After Jamie started seeing the psychiatrist she was placed on medication.[8]

During discovery in the case filed by Jamie, it became apparent that there are other inmates who had also been deprived of prescription medication by nursing staff or other prison personnel not qualified to make such decisions.   Many of these inmates experienced this upon their arrival at the SDWP.  Named Plaintiff Laura Rivera began her incarceration in 2002 at the SDWP.[9]  Prior to her incarceration in 2002, Rivera had been diagnosed with bipolar disorder by Dr. Leslie Fiferman, a psychologist from Rapid City, South Dakota.[10]  As a result of that diagnosis from Dr. Fiferman, Dr. Fox, a psychiatrist, prescribed antidepression and antipsychotic medications to treat Rivera's bipolar disorder.[11]  Upon her arrival at SDWP, members of the nursing staff confiscated the medications without any involvement of a medical doctor and told Rivera that she could not

---

[5] Amended Complaint, ¶41.

[6] Amended Complaint, ¶41.

[7] Amended Complaint, ¶42.

[8] Ex. 2, Singh Depo. pgs. 54-56.

[9] Amended Complaint, ¶43, Ex. 3, Rivera Depo., pg. 4.

[10] Amended Complaint, ¶44, Ex. 3, Rivera Depo., pgs. 6-7, 10-11.

[11] Amended Complaint, ¶45, Ex. 3, Rivera Depo., pg. 7.

have any of her medication until she consulted with the prison psychiatrist.  However, she was not allowed to see a psychiatrist for a month after her medications were taken from her.[12]  Since then and as recently May or June of 2007, prison personnel refused Rivera access to her medications, including an anti-psychotic medication.[13]  The withdrawal from the medication caused Rivera to suffer sweating, chills, heading and burning sensations.[14]

In addition to the two named plaintiffs, three putative class members identified as Jane Does Nos. 1 through 3 in Amended Complaint for Class Action have testified or provided statements about similar treatment.[15]  Jane Doe No. 1, while incarcerated at the Minnehaha County Jail and just prior to coming to SDWP, received various psychotropic medications prescribed by the jail's psychiatrist, Dr. Rajesh Singh.[16]  Dr. Singh is also the psychiatrist for the SDWP.[17]  However, upon her arrival at the SDWP, the health services department personnel (nurses) and counseling staff refused Jane Doe No. 1 access to these medications.[18]  She spent approximately ten weeks without any kind of medication at all.[19]  Finally prison personnel placed Jane Doe No. 1 on medication, but changed the

---

[12] Amended Complaint, ¶46, Ex. 3, Rivera Depo., pg. 11.

[13] Amended Complaint, ¶47; Ex. 3, Rivera Depo., pgs. 13-14.

[14] Ex. 3, Rivera Depo., pg. 14.

[15] We describe these individuals in our complaint as "Jane Does" not because we do not know their identity, but as an effort to afford them with some level of privacy from potential publicity or embarrassment.

[16] Amended Complaint, ¶¶50-52; Ex. 4, Peterson Depo., pgs. 8-11.

[17] Ex. 2, Singh Depo, pg. 6.

[18] Amended Complaint, ¶53; Ex. 4, Peterson Depo., pgs. 12-13.

[19] Amended Complaint, ¶¶53-54; Ex. 4, Peterson Depo., pgs. 12-13.

medications from what had previously been prescribed by Dr. Singh.[20]  Dr. Singh did not consult on this decision.[21]  It was months before Jane Doe gained permission from the prison to see Dr. Singh.[22]  Once Jane Doe saw Dr. Singh, he placed her back on the same medications that he had prescribed to her prior to her coming to the prison.[23]

Jane Doe No. 2 is an inmate living with HIV.[24]  She has been living with HIV since 2002.[25]  She arrived at SDWP in July of 2005.[26]  When she was taken into custody and trasnported to prison, she did not have her HIV medications in her possession.[27]  However, she notified the nursing staff right away at intake about her need for those medications.[28]  The nursing staff knew Jane Doe No. 2 because of her prior visits to the prison and knew she had to be on medication for HIV.[29]  In fact, in her other visits to the prison, Jane Doe took the exact same medication.[30]

---

[20] Amended Complaint, ¶¶53-54; Ex. 4, Peterson Depo., pgs. 12-13.

[21] Ex. 4, Peterson Depo., pgs. 13-14.

[22] Amended Complaint ¶¶56-57; Ex. 4, Peterson Depo., pg. 14.

[23] Amended Complaint, ¶¶56-57; Ex. 4, Peterson Depo., pgs. 14-15.

[24] Amended Complaint, ¶¶58-60; Ex. 5, Paulson Depo., pg. 5.

[25] Ex. 5, Paulson Depo. pg. 5.

[26] Ex. 5, Paulson Depo., pg. 5.

[27] Ex. 5, Paulson Depo. pg. 8; Paulson testified that her parole officer would not allow her to return home to retrieve the medications.

[28] Ex. 5, Paulson Depo., pg. 9.

[29] Ex. 5, Paulson Depo., pg. 11.

[30] Ex. 5, Paulson Depo., pgs. 11-12.

The head nurse told Jane Doe No.2 that her situation would get looked into, but that she would not get her prescriptions until she saw a specialist.[31]   Despite warning nursing staff how dangerous it was for her to be without these medications, it took four to five months before she saw a specialist and resumed her medications.[32]  By this time, her antiviral load measured in the danger zone.[33]

Jane Doe No. 3 arrived at the SDWP in 2005 to commence her prison sentence.[34] She had recently been on psychotropic medications prescribed by her physician.[35]  At the time of her arrival, Jane Doe No. 3 requested consult with the prison psychiatrist so that she could start back on her psychotropic medications.[36]   Prison counseling staff told her that because the length of her stay was only 105 days, she would not be allowed to see the psychiatrist.[37]  Accordingly, Jane Doe No. 3 did not have her medications during her stay at SDWP.[38]

Once it became apparent that numerous other inmates had similar experiences, plaintiffs' counsel, upon information and belief that this is a pattern and practice of systemic

---

[31] Ex. 5, Paulson Depo., pgs. 9-10.

[32] Amended Complaint, ¶¶61-62; Ex. 5, Paulson Depo., pgs. 9, 12-13.

[33] Amended Complaint, ¶63; Ex. 5, Paulson Depo., pg. 5-6.

[34] Amended Complaint, ¶64.

[35] Amended Complaint, ¶65.

[36] Amended Complaint, ¶66.

[37] Amended Complaint, ¶67.

[38] Amended Complaint, ¶67.

behavior by the SDWP, filed this class action.  Plaintiffs' desire in filing this suit is to prevent the prison from allowing unqualified personnel to make decisions about existing and future prisoners' medications.  Since filing the class action, plaintiffs' counsel has been contacted by more inmates with similar experiences.[39]

For the reasons set forth below, plaintiff's Motion for Class Certification should be granted.

## ARGUMENT:

**I.     This Case is Properly Maintained as a Class Action.**

**A.     Background Principles Applicable to Class Certification.**

To obtain certification of the classes, plaintiffs must demonstrate that all four threshold requirements of Rule 23(a) are satisfied.  F.R.C.P. 23(a), (b); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *In re St. Jude Medical, Inc.*, 425 F.3d 1116, 1119 (8th Cir. 2005).  Under Rule 23(a), in order for a class to be certified, the following requirements must be satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims of defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately

---

[39] Plaintiffs' counsel is in the process of asking this Court to amend the class action complaint to include Christa Stork.  She experienced the same kind of treatment and deprivation of medication as the putative and named plaintiffs in this action. The details of her case are more fully outlined in Plaintiffs' Brief in Support of Motion to Amend Complaint.   In addition, Plaintiffs' counsel has also been contacted by another inmate who was scheduled for major back surgery by her own physician just before being sent to prison.  The surgery did not take place due to her incarceration.  Upon her arrival at SDWP the nursing staff confiscated her pain medications and have not allowed her to see a physician for the past five months since her arrival.  She lives in severe pain on a daily basis.

protect the interests of the class.

F.R.C.P. 23(a).  In addition, the class must meet the requirements of one of the three

subsections set forth in Rule 23(b).  Here, the named plaintiffs seek certification

pursuant to Rule 23(b)(2).

**B.     The Rule 23(a) Prerequisites to Class Certification Have Been Satifisfied.**

1.     Numerosity and Impracticability of Joinder

The first prerequisite of Rule 23(a) is that: "the class is so numerous that joinder

of all members is impracticable."  F.R.C.P. 23(a)(1).  The Eighth Circuit has established

standards with regard to numerosity in *Paxton v. Union National Bank*, 688 F.2d 552

(8th Cir. 1982):

> A number of factors are relevant to this inquiry, <u>the most obvious of which is, of course, the number of persons in the proposed class</u>.  No arbitrary rules regarding the necessary size of classes have been established.  *Boyd v. Ozark Air Lines, Inc.*, 568 F.2d 50, 54 (8th Cir. 1977).  In addition to the size of the class, the court may also consider the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the putative class members.  See C. Wright & A. Miller, *Federal Practice and Procedure*, §1762.

*Paxton,* 688 F.2d at 559-560 (emphasis added).  While the *Paxton* court did not

establish a rule regarding the necessary size of a class, it did cite several cases in

which courts certified classes of 25 members or fewer, including the Eighth Circuit's

earlier decision in *Arkansas Education Assoc. v. Board of Education*, 446 F.2d 763,

765-66 (8th Cir. 1971), in which the court certified a class with 20 members.  *Paxton*,

688 F.2d at 561.  In fact, courts have found the numerosity requirement satisfied in

-8-

classes as few as 10 to 40 members.  *Phipps v. Sheriff of Cook County*, ___ F.Supp.2d ___, 2008 WL 794981, *8 (N.D.Ill.).

Additionally, in cases such as this one, where the defendants' ongoing pursuit of the same practice that caused the violation of the named plaintiffs' individual rights (as is assumed for the present purposes) continues to operate as to other inmates, there is a strong inference from the number of people who pass through the system that the number is large enough to satisfy the requirements of Rule 23(a)(1).  *Copeland v. Washington*, 162 F.R.D. 542, 544 (N.D. Ill. 1995) (certifying class despite that fact that an exact number could not be determined); *See Phipps,* 2008 WL 794981 (certifying class of only 12 identified putative members and relying upon plaintiffs' counsel's reasonable estimate as to number of inmates subject to class); *Twarog v. Allen*, 2007 WL 2228635 (M.D. Ala.) (certifying class based upon reasonable estimate of number of class members in prison system who fit class description.)

The injunctive relief class here meets the standards above.  The SDWP currently houses a little more than 350 inmates.  Wherein approximately 130 of those inmates are currently on medication.[40]  Potentially, all 130 of those inmates who are currently on medication, would have been on medication when they arrived at the SDWP.  Many more likely arrived at the prison and were denied their current medications and subsequently were never placed back on those medications.

Furthermore, Plaintiffs' counsel at this stage have specifically identified two named class representatives which have been subject to the unlawful deprivation of

---

[40] Ex.1, Fenske depo, pg. 69.

medication by the SDWP and specifically provided information about three more Jane Does with similar situations.  Furthermore, additional inmates have contacted plaintiffs' counsel with the same set of circumstances and will be added to this lawsuit.[41]  There is a strong inference from the number of people identified so far, the volume of prisoners at the prison who are currently on medication and the general population of the prison in general, that the potential class involved here far exceeds any minimum required for numerosity under Rule 23(a)(1).

In addition, the fact that the class also includes future inmates also makes identification difficult and therefore joinder is clearly impracticable.  *Brown v. Sec'y, Dep't of Corrections,* 2005 WL 1473817 at *7 (M.D. Fla. June 21, 2005) (finding numerosity met where the class described included present and future inmates who are or will be housed in segregated housing in all of the Florida correctional institutions, which potentially included every inmate in custody of the Florida Department of Corrections); *Skinner v. Uphoff*, 209 F.R.D. 484, 488 (D.Wyo. 2002).  The class in this case is defined as:

> All individuals who are now or <u>who will be in the future</u>
> incarcerated at the South Women's Prison and who are
> denied or delayed access to medication or medical
> treatment, that has been prescribed by a treating physician,
> based on decisions made by persons who are not
> themselves qualified to prescribe medications or medical
> treatment

The class here meets the requirements of Rule 23(a)(1).

---

[41] Plaintiffs' counsel has filed along with this Motion for Certification, a motion to file a seconded amended complaint to add Christa Stork.

2.      There are Questions of Law or Fact Common to the Class

The second prerequisite of Rule 23(a) is that there is a single question of law or fact common to members of the class.  F.R.C.P. 23(a)(2).  The Eighth Circuit also established standards with regard to common questions in *Paxton*:

> Rule 23(a)(2) requires that there be common questions of law or fact among members of the class.  The rule does not require that every question of law or fact be common to every member of the class, and may be satisfied, for example, where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated.

*Id.* at 561 (citations omitted).  In *Paxton*, the court found that there are common questions where a single issue "prevades all the class members' claims."  *Id.*

The Amended Complaint for Class Action identifies both factual and legal issues common to the entire class.  The class members each have been deprived of prescription medication without consultation with a medical physician.  The related common questions of law as to each inmate include, but are not limited to: whether defendants acted with deliberate indifference to the health, safety and serious mental and medical health needs of the inmates; and whether the inmates have been subjected to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments.

3.      The Claims of the Representative are Typical of Claims of the Class.

The third prerequisite of Rule 23(a) is that the putative named plaintiffs' claims be typical of those of the class.  In *Paxton*, the Eighth Circuit stated that "this

-11-

requirement is generally considered to be satisfied 'if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory.'" *Id.* at 561-62 (citing to C. Wright & A. Miller, *Federal Practice and Procedure* s 1764 at n.21.1 (Suppl. 1982)).  The fundamental inquiry for typicality is whether all members of the class would benefit in some way from a judgment favorable to the plaintiffs.  *See Ellis v. Naval Air Rework Facility*, 404 F.Supp. 391, 396 (N.D. Cal. 1975).

The putative plaintiffs are inmates who personally experienced the consequences of the defendants' policies, practices, acts and omissions pertaining to the illegal deprivation of inmates' prescription medication.  Each of the named plaintiff's has also been subjected to the same actions of the defendants.  In addition, plaintiffs' counsel has interviewed and corresponded with putative class members who are suffering the same constitutional injury as the putative named plaintiffs.  This case is based upon the defendants conduct which has affected the class as a whole, causing the entire class to be threatened with injuries of an identical nature.  The claims of the putative named plaintiffs are typical of those of the class; they are "part of the class and possess the same interest and suffer the same injury as the class members."  *East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 403 (1977) (internal quotation marks omitted).

Additionally, all members of the class would benefit from the change in the prison's practices of allowing non-qualified personnel to make decisions about prescription medication.

4.    The Plaintiffs and Their Counsel will Adequately Represent the Proposed Class.

The fourth prerequisite of Rule 23(a) is that "the representatives parties will fairly and adequately protect the interests of the class."  The Eighth Circuit established standards with regard to adequacy in *Paxton*:

> The focus of Rule 23(a)(4) is whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel.

*Paxton,* 688 F.2d 552, 562-63.  *See also, Hanson v. Acceleration Life Ins. Co.*, 1999 WL 33283345, at *11 (D.N.D., Mar. 16, 1999) ("[T]he class representatives need not be perfect or the best of all possible representatives, rather, they must act in the best interests of the class.").

The named plaintiffs in this action have no conflict with those of the remainder of the class.  All class members have been adversely affected by the actions of the defendants and therefore have a strong common interest in proving its existence.  Their interests are indisputably similar.

In addition, counsel in this action has previous experience in prosecuting class action litigation and is willing and able to vigorously prosecute this action and to obtain the best possible conclusion.[42]  Finally, counsel's role in the related action of *Lambertz*

---

[42]  See *Ross v. Flandreau Santee Sioux Tribe*, 809 F.Supp. 738 (D.S.D. 1992) and *Bergonzie v. Central States Health and Life Company of Omaha*, Civ. No. 02-4096, filed in the United States District Court of District of South Dakota.

-13-

*v. Reisch, et al.*[43] has resulted in the assembly of other evidence through depositions and discovery requests that resulted in the evidence necessary to pursue this action. By contrast, the individual class members, who are prison inmates, are in a poor position to duplicate this effort.

### C.    The Class Satisfies the Requirements of Rule 23(b)(2).

The final requirement for class certification is satisfaction of at least one of the subsections of Rule 23(b).  Plaintiffs seek certification under Rule 23(b)(2).  Certification is appropriate pursuant to Rule 23(b)(2) where:

> The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

F.R.C.P. 23(b)(2).  Injunctive challenges to prison conditions routinely proceed as class actions, and are typically maintained under subdivision (b)(2).  *See e.g., Jones 'El v. Berge*, 374 F.3d 541 (7th Cir. 2004); *Hoptowit v. Ray*, 682 F.2d 1237, 1245 (9th Cir. 1982) (class certified under Rule 23(b)(2); *Jones v. Diamond*, 519 F.2d 1090, 1100 (5th Cir. 1975) (encouraging the liberal application of Rule 23, and in particular subdivision (b)(2), in civil rights actions, and observing that "[r]ealistically, class actions are the only practicable judicial mechanism for the cleansing reformation and purification of these penal institutions.").

In this case, defendants' unconstitutional policies, practices, acts and omissions pertaining to the deprivation of prescription medication to inmates are imposed on all

---

[43] Civ. No. 06-3008 filed in the United States District Court of the District of South Dakota.

class members, and declaratory and injunctive relief will redound to the benefit of the class as a whole.  Accordingly Rule 23(b)(2) is satisfied.

## CONCLUSION:

For the reasons set for above, Plaintiffs' Motion for Class Certification should be granted and plaintiff's counsel should be appointed to represent the certified class, pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

Dated this 21st day of April, 2008.


By:     /s/ Mike Abourezk_____
        Mike Abourezk
        ABOUREZK LAW FIRM
        Attorneys for Plaintiff
        PO Box 9460
        2020 W. Omaha St.
        Rapid City, South Dakota 57709
        (605) 342-0097

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | | |
|---|---|---|
| JAMIE LAMBERTZ-BRINKMAN, LAURA RIVERA, and Jane Does 4 through 10, on behalf of themselves and all others similarly situated.<br><br>              Plaintiff,<br><br>vs.<br><br>TIM REISCH, Secretary of the S.D. Department of Corrections, DUANE RUSSELL, Warden of the S.D. Women's Prison, JUDITH STOUT, Head Nurse of Health Services Department at the S.D. Women's Prison, and John Doe Defendants.<br><br>              Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civ. No. 07-3040<br><br><br>**CERTIFICATE OF SERVICE FOR**<br>**Brief in Support of Motion for**<br>**Class Certification** |

      The undersigned hereby certifies that on the 21st of April, 2008, he electronically filed and served a true and correct copy of the foregoing **Brief in Support of Motion for Class  Certification** document to:

                Mike Shaw
                Patrick Grode
                May, Adam, Gerdes & Thompson
                PO Box 160
                Pierre SD 57501

                        By:    /s/ Mike Abourezk
                                Mike Abourezk
                                  ABOUREZK LAW FIRM
                                Attorneys for Plaintiff
                                PO Box 9460
                                2020 W. Omaha St.
                                Rapid City, South Dakota 57709
                                (605) 342-0097

-16-

**Exhibit Index to Brief in Support of Motion for Class Certification**

| Exhibit # | Description |
|-----------|-------------|
| 1 | Fenske Depo., p. 69 |
| 2 | Dr. Singh Depo., pp. 6, 54-56 |
| 3 | Rivera Depo., pp. 4, 6-7, 10-11, 13-14 |
| 4 | Peterson Depo., pp. 8-11, 12-15 |
| 5 | Paulson Depo., pp. 5-6, 8-13 |