UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | | |
|---|---|---|
| JAMIE LAMBERTZ-BRINKMAN, LAURA RIVERA, CHRISTA STORK, and Jane Does 4 through 10, on behalf of themselves and all others similarly situated. | ) ) ) ) ) ) | Civ. No. 07-3040 |
| Plaintiffs, | ) ) | |
| vs. | ) ) | PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES |
| TIM REISCH, Secretary of the S.D. Department of Corrections, DUANE RUSSELL, Warden of the S.D. Women's Prison, JUDITH STOUT, Head Nurse of Health Services Department at the S.D. Women's Prison, and John Doe Defendants. | ) ) ) ) ) ) ) ) | SUPPORTING APPROVAL OF STIPULATION AND SETTLEMENT AGREEMENT |
| Defendants. | ) ) | |

INTRODUCTORY STATEMENT

This is a class action brought by inmates of the South Dakota Women's Prison, seeking injunctive relief. The parties have reached a joint Stipulation and Settlement Agreement. All named class representatives, except one, have endorsed the agreement. The signing parties now jointly ask the Court to review the Settlement Agreement pursuant to Rule 23(e), schedule a fairness hearing, and enter an order approving settlement on behalf of the class.

FACTUAL AND PROCEDURAL BACKGROUND

Jamie Lambertz-Brinkman and Laura Rivera are former inmates at the South Dakota Women's Prison in Pierre, South Dakota. They initiated this action on November 21, 2007, while still prisoners, seeking relief for themselves and all others similarly situated. (Doc. 1.) Inmate Christa Stork later joined as a named Plaintiff. See Amended Complaints filed December 11, 2007 (Doc.6), and January 21, 2009 (Doc. 45).

Plaintiffs' Complaint and Amended Complaints seek no monetary relief. Plaintiffs sought only injunctive relief. Plaintiffs alleged that prison nurses withheld medications prescribed by physicians, based on the nurse's discretion only, and without involvement or direction by physicians or other persons authorized by law to prescribe medications. Second Amended Complaint, Doc. 45.

On October 31, 2008, the Court granted class action certification pursuant to Fed. R. Civ. P. 23(b)(2), governing actions seeking injunctive relief. Doc. 32.

The parties have engaged in extensive discovery as well as contested motions during the four year history of this action. See the Procedural History outlined in Plaintiffs' Opposition to Motion to Dismiss, filed 4/25/11 (Doc. 54).

## THE SETTLEMENT AGREEMENT

On November 7, 2011, class counsel engaged in a settlement conference and mediation with Defendants and Defendant's counsel, and with the assistance of United States Magistrate Judge Mark Moreno. Judge Moreno succeeded in getting an agreement from the parties in the form of a joint Stipulation and Settlement Agreement. The parties now present that agreement to the Court for approval. The agreement provides, *inter-alia,* that:

> The Court shall enter an injunction to the effect that no prescription medication or dosage will be substituted, changed, increased, reduced or discontinued except under the direction of a qualified physician or other person authorized by law to prescribe medications.

Exhibit 1, filed herewith.

The Stipulation and Settlement Agreement essentially provides all of the relief ever requested by the Plaintiffs, other than recovery of attorney fees and costs, which class counsel has agreed to waive.

-2-

CLASS REPRESENTATIVE LAURA RIVERA HAS NOT SIGNED THE AGREEMENT

The proposed agreement is executed by *all but one* of the named class representatives. It is executed by class representatives Jamie Lambertz-Brinkman and Christa Stork, but not by Laura Rivera. It is also executed by class counsel Mike Abourezk.

For the Defendants, the agreement is executed by Denny Kaemingk, Secretary of the South Dakota Department of Corrections, Brenda Hyde, Warden of the South Dakota Women's Prison, Tanya Reiser, Clinical Supervisor for Correctional Services at the South Dakota Women's Prison, and by Michael F. Shaw, attorney for the Defendants.[1]

Class representative Laura Rivera, who is no longer an inmate at SDWP, has not signed the agreement. Class counsel has not been able to communicate with Rivera for most of the past six weeks. See Affidavit of Mike Abourezk. Rivera was aware of the settlement conference prior to its occurrence, because class counsel did have telephone contact with Rivera immediately before the conference held on November 7, 2011. *Id.* Counsel also had contact with her through e-mails. *Id.*

Class counsel will not divulge communications with Rivera unless she herself waives the attorney client privilege. However, class counsel had no reason to believe that Rivera did not understand and support the settlement position proposed by class counsel. *Id.* After the settlement conference, class counsel again spoke to Rivera by telephone. *Id.* Again, class counsel

---

[1] The original Defendants were TIM REISCH, who then held the position of Secretary of the S.D. Department of Corrections, DUANE RUSSELL, Warden of the S.D. Women's Prison, and JUDITH STOUT, Head Nurse of Health Services Department at the S.D. Women's Prison. F.R.C.P. 25(d) provides that an action against a public officer does not abate when the officer leaves office while the action is still pending. It also provides that the officer's successor is automatically substituted as a party.

had no reason to believe that Rivera did not support and agree with the settlement. *Id.*

Unfortunately, Rivera then dropped out of communication with class counsel. For weeks she did not return phone calls, or e-mails. *Id.* At one point class counsel located and contacted Rivera's mother and was told she may have been hospitalized at the Human Services Center in Yankton for several weeks. *Id.*

Rivera finally contacted class counsel's office by telephone for the first time in weeks on December 13, 2011. *Id.* Counsel mailed the settlement documents to her that same day, but Rivera then ceased communications with counsel once again, and did not execute and return the documents. *Id.* Class counsel or his staff tried calling Rivera over a dozen times during December and the first two weeks of January, all with no response. *Id.*

Finally, on January 13, 2012, and again on January 16, 2012, class counsel received e-mails from Rivera. *Id.* Counsel will not divulge the content of Rivera's communications with class counsel without a waiver of the privilege from Rivera. *Id.* However, Rivera did not return the settlement documents.

Faced with one class representative who has not signed the agreement, but two class representatives who have signed it, and a settlement agreement that provides Plaintiffs with virtually all of the relief requested in this lawsuit, class counsel determined that the best course of action is to do the following:

- present the settlement agreement to the Court along with this explanation of the circumstances;
- invite Laura Rivera to present her comments or any objections she may have to the Court for the Court's consideration. *Id.*

- present the Court with an outline of case-law governing approval of class action settlements;

- present the Court with an outline of case-law addressing circumstances where one or more class representatives disagree or object to settlement;

- seek the Court's approval of the settlement agreement on the basis that it is fair and equitable to the class members, and provides virtually all of the relief ever requested by Plaintiffs in this action, except payment of attorney fees, which class counsel has agreed to waive as a service to the class members and the Court.

## APPROVAL OF CLASS ACTION SETTLEMENTS

Approval of class action settlements is governed by Rule 23(e). It provides as follows:

(e)     Settlement, Voluntary Dismissal, or Compromise. The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

    (1)     The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

    (2)     If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

    (3)     The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

    (4)     If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

    (5)     Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

"Although Rule 23(e) states without exception that 'notice of the proposed dismissal or

compromise shall be given,' courts have consistently held that notice to class members is required only when consistent with the rule's purpose – the protection of absent class members. As an example, involuntary dismissals have been judicially exempted from the purview of the notice requirements of Rule 23(e) because there is no possibility that the named plaintiffs or their counsel could 'sell-out' the class for their own benefit." *Austin v. Pennsylvania Dept. of Corrections,* 876 F.Supp. 1437, 1455 (D.C. Pa. 1995), citing 7B Charles A. Wright et al., Federal Practice and Procedure § 1797, at 345 (1986).

In United Supreme Court's recent decision of *WalMart v. Dukes*, the Court explained that 23(b)(2) does not require that class members be given notice and opt-out rights because it is thought that notice has no purpose when the class is mandatory. 131 S.Ct. 2541, 2559 (2011). See also *Bowen v. General Motors Corporation, A C Spark Plug Division*, 542 F.Supp. 94, 98 (D.C. Ohio 1981).

This is a class action certified under 23(b)(2), seeking only injunctive relief. Although notice is not mandatory, the Stipulation and Settlement Agreement adopted by the parties nevertheless does propose giving class members notice by posting the notice on bulletin boards commonly used in the South Dakota Women's Prison for announcements of rules and other matters applicable to the prison population. The specific form of the notice proposed by the parties is contained in Exhibit 2 and 3. In addition to that, the named class representatives themselves will be given personal notice by U.S. Mail. This satisfies the underlying purposes of Rule 23(e) because:

- The class herein is restricted to "individuals who are now or who will be in the future incarcerated at the South Dakota Women's Prison." It is impossible to

     predict who *might become incarcerated in the future*, and thus, giving notice to all inmates presently incarcerated is fair and adequate notice;

- since the settlement does not restrict or impair the personal rights of any class member to bring their own individual actions for monetary damages, or limit any other individual rights of class members, the inadvertent failure of any individual class member to receive direct notice will have minimal impact on their interests in any event;

- since there is no right to opt-out of a mandatory Rule 23(b)(2) class seeking injunctive relief, class members have little to lose even in the absence of any notice whatsoever – and the class members here are being given much more than that;

- since the settlement affords class members virtually all of the relief requested, and requires no payment of attorney fees or costs to Plaintiffs' counsel by either class members or Defendants, there is little danger that class counsel or the signing class representatives are "selling out" the rights of class members in order to obtain personal gain.

CONSENSUS OF ALL CLASS REPRESENTATIVES IS NOT REQUIRED

In this case, only one of the three named class representatives has failed to sign the agreement. This is not a novel situation. In *Tardiff v. Knox County*, 247 F.R.D. 225, 229-30 (D.C. Me. 2008) the court outlined some of the legal principles governing the conduct of class representatives with respect to cooperating in settlement of a class action:

- "A class representative must always put the interest of the class ahead of her personal interest." *See Maywalt v. Parker & Parsley Petroleum Co.,* 864 F.Supp. 1422, 1430 (S.D.N.Y. 1994) (approving a class action settlement despite objections by class representatives)

- "The named plaintiffs should not be permitted to hold the absentee class hostage by refusing to assent to an otherwise fair and adequate settlement in order to secure their individual demands." *Id.,* quoting *Parker v. Anderson,* 667 F.2d 1204, 1211 (5th Cir. 1982)); 2 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 5:23 (2007) ("When a class complaint is filed, the class representative must always act for the best interests of the class ...").

- "The class representative is a fiduciary for the class." *See Greenfield v. U.S. Healthcare, Inc.,* 146 F.R.D. 118, 125 (E.D.Pa. 1993); 2 *Newberg on Class Actions* § 5:23 ("the class representative is ... charged with duties to the class that have been characterized by several courts as *fiduciary* in *nature.*") (emphasis added); 5 James Wm. Moore et al., *Moore's Federal Practice* § 23.25 (2006) ("The class representative acts as a fiduciary for the entire class.").

- "The class representative has a duty of loyalty to the putative class." *Id; see generally* Linda S. Mullenix, *Taking Adequacy Seriously: The Inadequate Assessment of Adequacy in Litigation and Settlement Classes*, 57 Vand. L.R. 1687, 1703-12 (2004).

- "A class representative cannot alone veto a settlement." Federal Judicial Center, *Manual for Complex Litigation* § 21.642 (2004).

- Moreover, "[i]f the judge concludes that class representatives have placed individual interests ahead of the class's and impeded a settlement that is advantageous to the class as a whole, the judge should take appropriate action, such as ... removing the class representatives ...." *Id.*

As the holdings above illustrate, it is patently improper for a class representative to hold up settlement as leverage to seek personal payment for themself. Further, the failure of a class representative to support a settlement does not preclude Court approval of the settlement.

In *Parker v. Anderson*, the Fifth Circuit Court of Appeals upheld the District Court's approval of a class action settlement *over the objection of ten out the eleven named plaintiffs,* as well as the objections of a number of class members. 667 F.2d 1204, 1207 (5th Cir. 1982). The bottom line is whether the settlement is fair and equitable to the class members as a whole, not whether the settlement puts money in the pockets of individual class representatives, or otherwise serves their individual interests.

## DISAGREEMENT BY ONE CLASS REPRESENTATIVE DOES NOT PRECLUDE CLASS COUNSEL FROM CONTINUING TO ADVOCATE THE ADVERSE INTERESTS OF OTHER CLASS MEMBERS

Nor does the refusal of one class representative to endorse settlement disqualify or prevent Plaintiffs' counsel from advocating settlement on behalf of the remaining class representatives and members. As stated by the Third Circuit Court of Appeals in *Lazy Oil Co. v. Witco Corp.*:

> In many class actions, one or more class representatives will object to a settlement and become adverse parties to the remaining class representatives (and the rest of the class). If, by applying the usual rules on attorney-client relations, class counsel could easily be disqualified in these cases, not only would the objectors enjoy great "leverage," but many

> fair and reasonable settlements would be undermined by the need to find substitute counsel after months or even years of fruitful settlement negotiations. "Moreover, the conflict rules do not appear to be drafted with class certification procedures in mind and may be at odds with the policies underlying the class action rules." Bruce A. Green, *Conflicts of Interest In Litigation: The Judicial Role,* 65 Fordham L.Rev. 71, 127 (1996).

*Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 589 (3d Cir. 1999).

The Third Circuit therefore adopted the following rule with respect to conflicts between class representatives and representation by class counsel:

> We therefore hold that, in the class action context, once some class representatives object to a settlement negotiated on their behalf, class counsel may continue to represent the remaining class representatives and the class as long as the interest of the class in continued representation by experienced counsel is not outweighed by the actual prejudice to the objectors of being opposed by their formal counsel.

*Lazy Oil,* at 590.

District Courts in the Eighth Circuit have recognized the same rules. *Bankamerica Corp. Securities Litigation,* 210 F.R.D. 694, 703-704 (D.C. Mo. 2002). In the *Bankamerica* litigation, Judge Nangle quoted with approval from *Lazy Oil Co. v. Witco Corp.*, noting that "in many class actions, one or more class representatives will object to a settlement and become adverse parties to the remaining class representatives (and the rest of the class)," citing *Maywalt v. Parker and Parsley Petroleum Co.,* 155 F.R.D. 494 (S.D.N.Y. 1994), aff'd 67 F.3d 1072, 1079 (2d Cir. 1995) ("class counsel's duty to the class as a whole frequently diverges from the opinion of either the named plaintiffs or other objectors."). Judge Nangle continued by stating that "class counsel's compelling obligation in a class action is to the group that makes up the class and class counsel must act in a way that best represents the interests of the entire class." Citing *Maywalt,* 155 F.R.D. at 496. "A determination of what is best for the class is not dependent on the special desires of the named plaintiffs." *Bankamerica,* 703, citing *Maywalt* at 496. "'Because the

'client' in a class action consists of numerous unnamed class members as well as the representatives,' and because the class itself 'often speaks in several voices,' it 'may be impossible for the class attorney to do more than act in what he believes to be the best interest of the class as a whole.'" *Bankamerica Corp.* at 704, citing *Parker v. Anderson,* 667 F.2d 1204, 1211-12 (5th Cir. 1982).

In the present case, the proposed agreement is not only the product of several years of adverse litigation, but the final settlement was arrived at with the assistance of U.S. Magistrate Judge Mark Moreno. It is hardly a "sell-out" of class member's interests, since it gives class members virtually all of the substantive relief demanded in the Complaint and Amended Complaints, except for payment of class counsel's attorney fees and expenses, which counsel is donating for the benefit of the class members and the Court.

Two of the three named class representatives have endorsed the agreement. It would be ridiculous for class counsel to abandon a favorable settlement after years of effort, just because one named class representative will not cooperate or sign the agreement based on reasons personal to herself.

Class counsel is not disclosing Rivera's communications, or her stated reasons for not signing the settlement agreement, unless Rivera herself divulges them first, or otherwise waives the privilege. Nevertheless, class counsel cannot responsibly or ethically hold up a settlement that is beneficial to all members of the class simply because an individual class representative will not cooperate. Nor can class counsel now hold up settlement on condition that Defendants make concessions that were never demanded in the Complaint, such as monetary payments to class representatives. Doing so would jeopardize the settlement and put both the class

representative as well as class counsel squarely in a conflict of interest position. It would risk the loss of a good and fair settlement that is beneficial to hundreds of inmates and thousands of future inmates.

## CONCLUSION

Class counsel and class representatives Jamie Lambertz-Brinkman and Christa Stork believe the settlement agreement is fair and equitable for the class members, and asks for the Court's review and approval. Plaintiffs' counsel is authorized to state that Defendants join in the motion to approve the settlement.

Dated this 22nd day of February, 2012.

By: /s/ Mike Abourezk
Mike Abourezk
ABOUREZK LAW FIRM

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 22nd of February, 2012, he electronically filed and served a true and correct copy of the foregoing **Plaintiffs' Memorandum of Points and Authorities Supporting Approval of Stipulation and Settlement Agreement** document to:

Mike Shaw
Patrick Grode
May, Adam, Gerdes & Thompson
PO Box 160
Pierre SD 57501

By: /s/ Mike Abourezk
Mike Abourezk
ABOUREZK LAW FIRM
Attorneys for Plaintiff
PO Box 9460
2020 W. Omaha St.
Rapid City, South Dakota 57709
(605) 342-0097